

U.S. Department of Justice

United States Attorney
Eastern District of New York

NEM:SK/DJM

271 Cadman Plaza East
Brooklyn, New York 11201

August 14, 2024

By Email and ECF

The Honorable Joseph A. Marutollo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Yomi Jones Olayeye
      Magistrate Docket No. 24-MJ-496

Dear Judge Marutollo:

  The government respectfully submits this letter in support of its motion for an order of detention for defendant Yomi Jones Olayeye, also known as "Sabbie" (the "defendant" or "Olayeye"), who presents a serious risk of flight. See 18 U.S.C. § 3142(f)(2). Olayeye is a citizen of Nigeria charged with conspiring with others to fraudulently obtain more than $10 million in pandemic unemployment assistance in the first months of the COVID-19 outbreak.

  Law enforcement officers arrested Olayeye last night at John F. Kennedy International Airport ("JFK Airport") pursuant to an arrest warrant. Specifically, in September 2020, a grand jury sitting in the District of Massachusetts returned an Indictment charging the defendant with wire fraud conspiracy, wire fraud, and aggravated identity theft, in violation of Title 18, United States Code, Sections 1349, 1343, and 1028A, respectively (the "Indictment"). Olayeye will make his first appearance this afternoon before Your Honor.

  Given Olayeye's minimal ties to the United States; his false statement on the non-immigrant visa application in connection with his trip to the United States; and the fact that Olayeye's offense: (1) yielded seven-figure proceeds, including money converted to readily accessible digital currencies; (2) involved the purchase and use of stolen personally identifiable information ("PII"); (3) involved the recruitment of money mules to launder criminal proceeds; and (4) exposes Olayeye to an estimated Guidelines range if convicted of 132 to 159 months' imprisonment, inclusive of a mandatory consecutive 24-month sentence, there is no condition or combination of conditions that can reasonably secure his appearance in Court. He should therefore be detained, notwithstanding the recent arrival in the United States of his spouse and children.

I.      Background

Olayeye is a resident and national of Nigeria. Before last night, he had never entered the United States.

According to the Indictment, between March and July 2020, Olayeye and others defrauded three pandemic unemployment insurance programs administered by the Massachusetts Department of Unemployment Assistance and other states' unemployment insurance agencies: traditional unemployment insurance ("UI"), Pandemic Unemployment Assistance ("PUA"), and Federal Pandemic Unemployment Compensation ("FPUC"). Olayeye and his co-conspirators purchased PII over criminal internet forums (Indictment ¶ 11a); applied online for UI, PUA, and FPUC, falsely representing themselves to be eligible state residents affected by the COVID-19 pandemic (Indictment ¶ 11b); opened U.S. bank and prepaid debit card accounts to receive assistance payments using the same fraudulently obtained PII (Indictment ¶ 11c); recruited U.S.-based accountholders known as "clients" to receive the proceeds of the fraud in their bank accounts and to send those funds to co-conspirators (Indictment ¶ 11e); used cash transfer applications, including Movo, to transfer proceeds of the fraud (Indictment ¶¶ 11f, 13j); purchased Bitcoin with the proceeds of the fraud over online marketplaces (Indictment ¶ 11g); and concealed the conspiracy's connection to Nigeria by leasing Internet Protocol ("IP") addresses assigned to computers located in the United States for use in the fraudulent transactions (Indictment ¶¶ 11g, 13a). In total, Olayeye and his co-conspirators applied for approximately $10,000,000 in fraudulent UI, PUA, and FPUC from Massachusetts, Hawaii, Indiana, Michigan, Pennsylvania, Montana, Maine, Ohio, and Washington, and received more than $1,500,000 in assistance to which they were not entitled.

The evidence against the defendant is also particularly compelling. The government intends to prove the defendant's guilt at trial using, among other things, the contents of his own e-mail and other social media accounts, which establish both his connections to his co-defendant and his control of significant quantities of PII tied to pandemic and other species of fraud.[1]

---

[1] By limited way of example, Olayeye's account contains links to the PUA/FPUC fraud charged in the Indictment. Specifically, the account contained receipts for the lease of U.S.-based IP addresses. Between May 14, 2020 and May 21, 2020, two of those leased IP addresses were used to file 21 fraudulent claims with the Massachusetts Department of Unemployment Assistance and resulted in $77,640 in PUA/FPUC losses. The same IP addresses have been tied to PUA/FPUC fraud in Washington, Colorado, and elsewhere.

Additionally, hundreds of emails sent from and received by Olayeye's e-mail account contain PII in the body of the email (or in attachments). For example, on May 1, 2020, Olayeye sent himself an email containing 18 attachments that included PII, account information, and email login credentials. Some of the attachments suggest his involvement in tax fraud (which is not charged in the Indictment), including "2018 1040 Overpayment.txt," "HR-PAYROLL," and "TAX RETURN FILED 2020.txt." Another email dated April 24, 2020 contained several Forms 8879, IRS e-File Signature Authorizations, completed in others' names

In September 2020, Olayeye and a co-conspirator were indicted in the District of Massachusetts on the conspiracy, wire fraud, and aggravated identity theft charges described above. An INTERPOL Red Notice was issued for his arrest. Yesterday, August 13, 2024, Olayeye arrived on a flight from London to JFK Airport, where he was arrested by the Secret Service. Olayeye's co-defendant remains at large.

The Government estimates Olayeye's Guidelines offense level after conviction at trial to be 31, based on the following calculation:

| Description | Base Offense/ enhancement | Citation |
|---|---|---|
| Base offense level | 7 | § 2B1.1(a)(1) |
| Loss enhancement (intended loss > $9,500,000) | +20 | § 2B1.1(b)(1)(H) |
| Victim Enhancement (10+) | +2 | § 2B1.1(b)(2)(A) |
| Overseas nexus | +2 | § 2B1.1(b)(10)(B) |
| Aggravated Identity Theft | +24 months | § 2B1.6(a) |
| **Total:** | **31** | |

Assuming that Olayeye falls within Criminal History Category of I, his estimated Guidelines range is 108 to 135 months in prison, to be followed by a mandatory consecutive 24 months in prison for aggravated identity theft.

II.     Legal Standard

   A.   The Bail Reform Act

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141–3156, provides that, in general, a court "shall order" a defendant's pretrial release unless the court determines that the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The government must ultimately persuade the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g).

---

and containing their PII. Olayeye's account also received solicitations from carderpay.ru and carder007, illicit sites that sold PII and financial information.

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

    B.    Proceeding by Proffer

Evidentiary rules do not apply at detention hearings and the Government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted).

III.    The Defendant Should Be Detained Pending Trial

Olayeye should be detained pending his removal to the District of Massachusetts because he poses an irremediable risk of flight.

Before yesterday, Olayeye had never been to the United States and he has no connection at all to the District of Massachusetts, where he will be prosecuted. Given his lack of ties to the United States, the Eastern District of New York and the District of Massachusetts, he has every incentive to flee. See United States v. Liebowitz, 669 F. App'x 603, 605 (2d Cir. 2016) ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); United States v. Baig, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); Mercedes, 254 F.3d at 438 (ordering pretrial detention and reversing the district court's grant of release where the defendant was a legal permanent resident of the United States (not a citizen), faced a substantial sentence, and evidence linked him to a violent robbery); United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained).

Despite being rejected for a U.S. non-immigrant visa in 2017, Olayeye falsely stated on his current visa application that he had never been refused a U.S. visa. His lack of candor with U.S. authorities undercuts any suggestion that he would be truthful with the United States Probation and Pretrial Services Office tasked with supervising his conditions of release.

The circumstances of Olayeye's alleged offense also make clear that he has the means and motivation to flee. As alleged in the Indictment, Olayeye and his co-conspirators purchased stolen PII on criminal internet forums and used that stolen PII in applications to state governments for pandemic assistance. The same sort of PII could be easily converted toward obtaining false travel documents. Olayeye and his co-conspirators are similarly alleged to have converted the seven-figure proceeds of their conspiracy to Bitcoin, and to have used cash transfer applications. Olayeye is also alleged to have used leased IP addresses that concealed his

4

location, and to have recruited co-conspirators in the United States to launder the proceeds of his offense, both skills useful in evading detection and re-arrest.

Olayeye's incentive to flee is particularly acute given the substantial sentence he would face if convicted. His anticipated Guidelines range is 132 months to 159 months in prison. That figure underscores the incentive for the defendant to flee the jurisdiction and avoid prosecution. See United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment). In addition, the evidence against Olayeye is overwhelming, given the connections between the content of his social media accounts and the offenses charged in the Indictment. See Millan, 4 F.3d at 1046 (holding that, where the evidence of guilt is strong, it provides "a considerable additional incentive to flee"). In light of his sentencing exposure, the presence of Olayeye's family in the U.S., while potentially tempering his short-term incentive to flee, should not affect the Court's calculus disproportionately. Olayeye's wife and children arrived here only in April 2024 in connection with his wife's temporary employment with a human service agency. Olayeye and his spouse have little incentive to remain in the United States if prosecution is likely to result in an extended jail term for him.

Because Olayeye has the means and motivation to flee, Olayeye presents a risk of flight that no combination of conditions can mitigate. Prosecutors in the District of Massachusetts have recently convicted a defendant released on conditions in another district who attempted to purchase a fraudulent Ukrainian passport to flee multi-million-dollar securities fraud charges in that district. See United States v. Padilla, 23-cr-10075-RGS (D. Mass.).

IV. Conclusion

For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will assure Olayeye's return to court. He should be detained pending his removal to the District of Massachusetts.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Daniel Marcus
Daniel Marcus
Assistant U.S. Attorney
(718) 254-6280

cc: Clerk of Court (JAM) (by ECF)
Counsel of Record (by email)

5